IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| NEKI PEAVY as administrator of the ESTATE OF COREY KINDELL, and BILLY EUGENE KINDELL as surviving father of COREY KINDELL, <br><br>    Plaintiffs, <br><br> v. <br><br> CORECIVIC, INC., CORECIVIC OF TENNESSEE, LLC, VANCE LAUGHLIN, QIANA MOBLEY, CHRISTY DAVIS, ANNIE REESE, VANESSA WISE, SHANIQUA WICKER, TASHIKA MCKINNON, and AMBERLYN FLOYD, <br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) CASE NO. 3:22-CV-00095-DHB-BKE |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants CoreCivic, Inc.; CoreCivic of Tennessee, LLC; Vance Laughlin; Qiana Mobley; Christy Davis; Annie Reese; Vanessa Wise; Shaniqua Wicker; Tashika McKinnon; and Amberlyn Floyd file this motion to dismiss Plaintiffs' Complaint (doc. 1) for failure properly plead and failure to state a claim pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

**INTRODUCTION**

On August 21, 2020, Plaintiffs' decedent, Corey Kindell, passed away from an apparent COVID-19 infection at Wheeler Correctional Facility. (Doc. 1 at ¶ 1). On August 22, 2022, Plaintiffs Neki Peavy and Billy Eugene Kindell, as administrator of Corey Kindell's estate and as Corey Kindell's next of kin, respectively, filed this lawsuit naming as Defendants CoreCivic, Inc., and CoreCivic of Tennessee, LLC, (the Corporate Defendants), as well as Vance Laughlin, Qiana

Mobley, Christy Davis, Annie Reese, Vanessa Wise, Shaniqua Wicker, Tashika McKinnon, and Amberlyn Floyd (the Individual Defendants). (See id.).

The Complaint alleges that the decedent was experiencing a severe COVID-19 infection that was left untreated, resulting in his death. (Id. at ¶¶ 2, 6, 10, 12-15). Plaintiffs specifically aver that the Defendants were aware of the decedent's condition and knew that he "was vulnerable to COVID-19 because of his significant obesity and his diagnosed hypertension" but did nothing to help him. (Id. at ¶¶ 3, 7, 10-11, 87). Plaintiffs also allege that "CoreCivic" had many written policies in place to combat the spread of the virus, but those policies were not followed at Wheeler Correctional Facility, resulting in a "widespread practice" "to disregard entirely any written policies and any efforts to isolate the sick from the well" and "freely allow the spread of COVID-19 through the population at Wheeler Correctional Facility." (Id. at ¶¶ 33-37, 39, 44, 48, 53, 56, 59, 63-69).

The Complaint states that "Plaintiffs bring this action for Defendants' gross negligence and wanton conduct under state law and for deliberate indifference under federal law, and for wrongful death and for the pain and suffering caused by failing to provide any care for weeks despite Kindell's obvious suffering." (Id. at ¶ 16). Plaintiffs enumerate the following counts in the Complaint: (I) "Deliberate Indifference Under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments Against the Individual Defendants;" (II) "Deliberate Indifference Under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments Against CoreCivic;" (III) "Gross Negligence, Willful or Wanton Misconduct, Reckless or Intentional Infliction of Harm Under O.C.G.A. §§ 51-1-13 and 51-16-2, *et seq.* Against All Defendants;" and (IV) "Attorneys' Fees Under O.C.G.A. § 13-6-11 Against All Defendants." (Id. at pp. 12-13, 15).

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (internal quotations and citations omitted); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013). When considering a motion to dismiss filed pursuant to Rule 12(b)(6), all facts in the complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." GSW, Inc. v. Long Cnty., 999 F.2d 1508, 1510 (11th Cir. 1993); Day v. Vaughn, 56 F. Supp. 3d 1377, 1379 (S.D. Ga. 2014). However, conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 664; see also Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations."). In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Iqbal, 556 U.S. at 678; Franklin, 738 F.3d at 1251; U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distribs., Inc., 918 F. Supp. 2d 1306, 1312 (S.D. Ga. 2013).

Courts should consider only those facts which are well-pled and "then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 664; Resnick v. AvMed, Inc., 693 F.3d 1317, 1325 (11th Cir. 2012); Day, 56 F. Supp. 3d at 1380. A plaintiff must allege "plausible grounds to infer" that his claims rise "above the speculative level." Twombly, 550 U.S.

at 570.  Put simply, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557); see also Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (explaining complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.")).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

**ARGUMENT AND CITATION TO AUTHORITY**

1. Plaintiffs' Complaint is an Impermissible Shotgun Pleading and Fails to State a Claim for Deliberate Indifference Under 42 U.S.C. § 1983 Against the Individual Defendants.

As a general rule, both the Eighth and Fourteenth Amendments to the United State Constitution are violated when a jailer is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020). A showing of deliberate indifference involves two prongs: an objective component and a subjective component. Id. First, Plaintiffs must demonstrate that there is an objectively substantial risk of harm to the inmate. Id. Second, Plaintiffs must prove the Individual Defendant's subjective deliberate indifference to that risk of harm through three sub-showings: (a) subjective knowledge of risk of serious harm; (b) disregard for that risk; and (c) by conduct that is more than mere negligence. Id. The Supreme Court and the Eleventh Circuit have both found that standard to even exceed gross negligence, requiring conduct rise to reckless disregard of the risk as used in the criminal law. Id at 1285-86; Farmer v. Brennan, 511 U.S. 825, 839-40 (1994). Even where prison officials actually knew of a substantial risk to inmate health or safety, they may nonetheless be found free from liability if they responded reasonably to the risk, even if the harm ultimately was

4

not averted. Farmer, 511 U.S. at 826 (1994). The Eleventh Circuit has made clear that the fundamental question in any deliberate indifference case is whether the defendants exhibited a sufficiently culpable state of mind. Swain, 961 F.3d at 1287.

Here, Defendants acknowledge that Plaintiffs' Complaint satisfies the objective element of the deliberate indifference claim. Id. at 1285 ("the risk of COVID-19 satisfies this requirement"). The inquiry thus hinges on whether Plaintiffs can meet their burden as to the subjective element and have alleged that each Individual Defendant disregarded the risks presented by the COVID-19 virus with conduct that is more analogous to the reckless disregard standard of criminal *mens rea* than to mere negligence. Barrett v. Whittington, No. 5:22-cv-271, 2022 WL 16625810, at *3 (M.D. Ga. Oct. 4, 2022) (citing Swain, 961 F.3d at 1288). Plaintiffs have not alleged sufficient facts to meet this burden and have not demonstrated for the purposes of this motion to dismiss phase that each Individual Defendant exhibited a sufficiently culpable state of mind.

Plaintiffs make a number of allegations detailing what that the "Individual Defendants" knew about the decedent's condition and failed to do in light of their alleged knowledge. (Doc. 1 at ¶¶ 67, 75-77, 79-85, 87-89, 91-92). For example, Plaintiffs allege that "[t]he Individual Defendants knew that Mr. Kindell was particularly sick because he had COVID-19 symptoms and was so weak that he could not get out of bed and was repeatedly begging for medical attention and reported that he could not breathe," (id. at ¶ 88), and that "the Individual Defendants did nothing," (id. at ¶ 89). The only allegations directed at a specific individual defendant is Plaintiffs' allegation that "Qiana Mobley knew Mr. Kindell was very sick so that he could not stand up, but instead of providing any care whatsoever, she disparaged Kindell, stating that he was a 'fat ass' and would be able to stand up if he might get a 'twinkie,'" (id. at ¶ 90), and Plaintiffs' allegation that "Warden Laughlin visited Mr. Kindell's dorm knowing that Kindell and others were sick," id. at ¶ 50.

5

Plaintiffs allege that "Laughlin told the incarcerated men that he knew they were suffering and that they could ask for over the counter pain medicine." (Id. at ¶ 50). There are no specific facts or allegations addressing the conduct of Christy Davis, Annie Reese, Vanessa Wise, Shaniqua Wicker, Tashika McKinnon, or Amberlyn Floyd, the other individual defendants. (See Doc. 1).

The Eleventh Circuit has made clear that it has "little tolerance for shotgun pleadings," as "[t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). The Eleventh Circuit has identified different types of shotgun pleadings, one of which being the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 131-23 (11th Cir. 2015).

Every allegation under Count One and virtually every factual allegation related to Count One states generally that the Individual Defendants committed the alleged tortious and unconstitutional conduct. Plaintiffs haphazardly lump all the Individual Defendants together without specifying how each defendant violated the decedent's rights. See Jackson v. St. Lawrence, No. 4:10-cv-291, 2011 WL 2535310, at *5 (S.D. Ga. June 27, 2011) (holding that the plaintiff must allege in *specific terms* how each named defendant is involved and that the plaintiff must plead specifically *how* each defendant violated his rights, *which* rights they violated, when they were violated, and whether the violation was intentional as opposed to merely negligent). Further, Plaintiffs impute this general "knowledge" to each Individual Defendant on the basis that "[t]he Individual Defendants were each assigned to Mr. Kindell's dormitory in the weeks leading to his death," and "they were assigned to supervise him and others in his dorm for entire days,

6

multiple periods of time in the weeks leading up to his demise." (Doc. 1 at ¶¶ 92, 102). Plaintiffs provide no factual allegations regarding the subjective knowledge of each Defendant individually to properly state a claim that amounts to deliberate indifference.

2. <u>Plaintiffs' Complaint Fails to State a Claim for Deliberate Indifference Under 42 U.S.C. § 1983 Against the Corporate Defendants.</u>

To state a deliberate indifference claim against an entity, Plaintiffs must show that the action was taken pursuant to or the constitutional deprivation was a result of an official custom or policy of the entity. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).[1] The custom or policy permitting the constitutional violation must be the moving force behind the constitutional violation. <u>Id.</u>; <u>Gretch v. Clayton</u>, 335 F.3d 1326, 1330 (11th Cir. 2003). A custom or policy is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs. <u>Monnell</u>, 436 U.S. at 691; <u>Depew v. City of St. Mary's</u>, 787 F.2d 1496, 1499 (11th Cir. 1986). To demonstrate an unconstitutional policy or custom, "[a] pattern of similar constitutional violations . . . is 'ordinarily necessary,'" because a single violation is not so pervasive as to amount to a custom. <u>Craig v. Floyd Cnty.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011)). Similarly, a plaintiff cannot rely only on his individual treatment to establish a policy or custom. <u>See id.</u> at 1311-12.

Both the Supreme Court and the Eleventh Circuit have held that the standard required to prove the existence of a custom is steep. <u>See id.</u> at 1310; <u>Tuttle</u>, 471 U.S. at 819. For example, in <u>McDowell v. Brown</u>, a former detainee alleged that a policy of understaffing at the jail in which he was detained led to a violation of his civil rights when he was not transported to the hospital in time

---

[1] While <u>Monell</u> originally applied only to a municipal corporation, the Eleventh Circuit extended the standard to private entities performing functions traditionally within the exclusive prerogative of the state in <u>Harvey v. Harvey</u>. 949 F.2d 1127 (11th Cir. 1992).

to prevent him from suffering severe injuries. 392 F.3d 1283, 1286-89 (11th Cir. 2004). The Eleventh Circuit determined that while the case was tragic, the plaintiff was unable to point to any other occasion where the jail's understaffing exacerbated an inmate's medical condition. Id. at 1290-91. This isolated incident was not enough to demonstrate a "persistent" and "widespread" policy. Id. If a plaintiff does offer other instances to prove a custom, the incidents must be substantially similar to the one at hand and violate essentially the same constitutional right. Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005). Furthermore, these complaints must have merit; unsubstantiated complaints are not sufficient to establish a custom. Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987).

In an attempt to establish an unconstitutional practice, Plaintiffs first acknowledge that "CoreCivic"[2] had written policies in place to combat the spread of the virus. (Doc. 1 at ¶ 33). Plaintiffs identify several of these policies and state that CoreCivic's policies:

    a.    mandated that staff identify and isolate COVID-19 positive incarcerated men, regularly test for the virus, separate the sick from the well, and notify staff and incarcerated men and local authorities of potential exposures; (id. at ¶ 34);

    b.    provided that staff "shall" "[p]romptly identify and contain inmates with coronavirus-like symptoms; "[i]solate or cohort inmates who are sick with pandemic coronavirus;" and "[c]onduct contact investigations for coronavirus cases and quarantine contacts;" (id. at ¶ 35);

    c.    required implementation of Georgia Department of Corrections policies regarding COVID-19, which included mandatory placement of confirmed or suspected COVID-19 positive incarcerated men in isolation; (id. at ¶¶ 36-37);

    d.    required staff to identify and isolate incarcerated men at a high risk of special susceptibility to COVID-19 before exposure to COVID-19; (id. at ¶ 44);

    e.    provided that anyone experiencing symptoms consistent with COVID-19, such as coughing fever, or shortness of breath, would receive the highest priority medical

---

[2] Plaintiffs' Complaint does not delineate allegations against CoreCivic, Inc., and CoreCivic of Tennessee, LLC, but rather Plaintiffs apparently refer to the Corporate Defendants generally as "CoreCivic."

    treatment—whether the symptoms were self-reported or observed by other incarcerated men or by CoreCivic staff; (id. at ¶ 48);

 f. provided for a quarantine period for any incarcerated person returning from an off-site visit; id. at ¶ 53);

 g. mandated that any suspected COVID-19 positive incarcerated person be tested for COVID-19; (id. at ¶ 56); and,

 h. were to have Wheeler Correctional Facility fully staffed (id. at ¶ 59).

Plaintiffs then allege that, although CoreCivic had extensive policies in place addressing COVID-19, the Individual Defendants ultimately failed to follow the policies. Thus, a de facto practice was created wherein the "real policy" was, basically, to not follow the policies. (See id. at ¶ 63 ("As of July and August 2020, CoreCivic's practice was to disregard entirely any written policies and any efforts to isolate the sick from the well.")). Plaintiffs argue that, instead, the "real policies" were to:

 a. fail to take appropriate measures to ensure minimally adequate staffing;

 b. fail to take any measures to ensure staff compliance with written policies;

 c. do nothing to quarantine inmates coming into the facility;

 d. do nothing to separate the sick from healthy;

 e. do nothing to separate and isolate the most medically vulnerable;

 f. do nothing to test suspected COVID-19 positive men;

 g. do nothing to help obviously sick men; and,

 h. do nothing to treat or transport men who were sick enough to die.

(Id. at ¶ 117). Plaintiffs even go so far as to allege that "the widespread practice was to freely allow the spread of COVID-19 through the population at Wheeler Correctional Facility," and "CoreCivic's practice of allowing all incarcerated men at Wheeler Correctional Facility to contract COVID-19 was widespread and devastatingly effective." (Id. at ¶¶ 64-65).

9

These allegations, however, are not sufficient to state a claim for deliberate indifference against CoreCivic, Inc., or CoreCivic of Tennessee, LLC. A defendant cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior or vicarious liability basis. Monell, 436 U.S. at 658. Specifically, an entity "cannot be faulted for the conduct of its employees." Harvey, 949 F.2d at 1130. Plaintiffs have not shown a widespread practice of CoreCivic as an entity, but rather they attempt to vicariously impute the alleged conduct of the Individual Defendants to CoreCivic.

Plaintiffs have not alleged that CoreCivic as an entity or any supervisory official, including Warden Laughlin, "instructed a subordinate correctional officer to act unlawfully or knew they would do so and failed to stop them." Cox v. Ward, No. 5:22-cv-8, 2022 WL 3220379, at *6 (M.D. Ga. Aug. 9, 2022). Plaintiffs allege that "CoreCivic knew that policies outlined above were being ignored on a systematic basis at Wheeler Correctional Facility and at other CoreCivic facilities, but did nothing to correct the widespread and wholesale departure from policy." (Doc. 1 at ¶ 119). These allegations, however, are merely conclusory and must be disregarded. Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (noting that legal conclusions devoid of any factual support are not entitled to an assumption of truth).

Plaintiffs also have not sufficiently alleged facts regarding other instances to demonstrate a "persistent" and "widespread" policy, practice, or custom. In Cox, the plaintiff appeared to suggest that the defendants had a policy of understaffing the prison and that this policy prevented the plaintiff from obtaining medical care when he needed it. 2022 WL 3220379, at *6. The Cox court quoted Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019), and said that "[a] plaintiff can only allege the existence of a policy or custom by point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee." 2022 WL 3220379, at *6. The court concluded that the plaintiff had not pointed to any other incidents where inmates were not able to

receive medical attention that would have given the defendants actual or constructive notice that their policies could lead to constitutional violations. Id.

Similarly, here, Plaintiffs have alleged that CoreCivic's policies were in fact the inverse of their official policies but have pointed to no other instances where these alleged unofficial, de facto policies caused a constitutional violation. Plaintiffs generally allege that there was a "widespread practice at Wheeler" to "lump sick and healthy inmates together" and that "Mr. Kindell, like other men in his position, received no medical attention whatsoever despite obviously meeting the criteria for high priority treatment." (Doc. 1 at ¶¶ 39, 52). Plaintiffs also allege that CoreCivic's policies were being ignored at "other CoreCivic facilities." (Id. at ¶ 119). These allegations, however, are merely conclusory and must be disregarded. Further, in Cox, the Court found that the plaintiff's allegations that other inmates were exposed to COVID-19 and were not provided adequate medical care were too vague and conclusory to state an actionable Eighth Amendment claim. 2022 WL 3220379 at *6. Plaintiffs have not supplied the Court with any facts sufficient to clear the Monell hurdle. Plaintiffs cannot rely only on their decedent's alleged individual treatment because a single violation is not so pervasive as to amount to a custom or policy. Craig, 643 F.3d at 1310-12. Plaintiffs cannot show that CoreCivic's policies were anything other than the official policies that were enacted to address COVID-19.

Further, Plaintiffs cannot show that CoreCivic disregarded the risks presented by COVID-19 with conduct that is more analogous to the reckless disregard standard of criminal *mens rea* than to mere negligence. Barrett, 2022 WL 16625810, at *3. CoreCivic may only be held liable for deliberate indifference if it disregarded a known substantial risk of serious harm by failing to take reasonable measures. Id. CoreCivic may be found free from liability if it reasonably responded to the risk, even if the harm ultimately was not averted. Id. The Eleventh Circuit recently held that

11

a prison was not deliberately indifferent when it had simply done the best that it could given the circumstances and the nature of the pandemic. Swain, 961 F.3d at 1289. The Court stated that "[w]e simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by doing their best. Because the defendants acted reasonably, they cannot be found liable under the Eighth Amendment." Id. The plaintiffs in Swain argued that the defendant prison acted with deliberate indifference to the medical needs of inmates because COVID-19 continued to spread at the prison and adequate social distancing was impossible to achieve within the prison. Id. at 1286. The Eleventh Circuit, however, noted that failing to do the impossible does not equal indifference, let alone deliberate indifference. Id. at 1287. The Court made clear that the fundamental question in any deliberate indifference case is whether the defendants exhibited a sufficiently culpable state of mind. Id. In evaluating that question, the Court focused not on isolated failures or impossibilities, but rather on the defendants' entire course of conduct. Id. at 1287-1288.

When faced with the potential for serious harm posed by COVID-19, CoreCivic did not do nothing. Rather, CoreCivic enacted a series of policies to prevent the spread of the virus and protect the inmates as well as it could, which Plaintiffs concede in their complaint. (Doc. 1 at ¶¶ 33-37, 48, 53, 56). Plaintiffs have not stated a claim for deliberate indifference against the Corporate Defendants and these claims must be dismissed.

> 3. <u>Plaintiffs' Complaint is an Impermissible Shotgun Pleading and Fails to State a Claim for Gross Negligence, Willful or Wanton Misconduct, or Reckless or Intentional Infliction of Harm Under O.C.G.A. §§ 51-1-13 and 51-16-2, *et seq.* Against All Defendants.</u>
>
>> i. *<u>Gross Negligence Against the Individual Defendants</u>*

Plaintiffs' gross negligence claim against the Individual Defendants fail for the same reasons given in Section 1 of this brief, discussed supra. Every allegation under Count Three and

virtually every factual allegation related to Count Three states generally that the Defendants committed the alleged tortious conduct. Plaintiffs lump all the Defendants—Individual and Corporate—together without specifying how each defendant harmed the decedent. See Jackson v. St. Lawrence, No. 4:10-cv-291, 2011 WL 2535310, at *5 (S.D. Ga. June 27, 2011) (holding that the plaintiff must allege in *specific terms* how each named defendant is involved and that the plaintiff must plead specifically *how* each defendant violated his rights, *which* rights they violated, when they were violated, and whether the violation was intentional as opposed to merely negligent). Plaintiffs' allegations under Count III constitute an impermissible shotgun pleading upon which relief may not be granted.

### ii. *Gross Negligence Against the Corporate Defendants*

Plaintiff alleges that Defendants were grossly negligent under O.C.G.A. § 51-1-13 and 51-16-2, *et seq.* Section 51-1-13 imposes a duty not to cause physical injury. It provides that a "physical injury done to another shall give a right action to the injured party, whatever may be the intention of the person causing the injury, unless he is justified under some rule of law." The statute further states that "intention must be considered in the assessment of the damages." See O.C.G.A. § 51-1-13. The majority of cases brought under O.C.G.A. § 51-1-13 frame the issue as a cause of action for battery. See Metro. Atlanta Rapid Transit Auth. v. Mosley, 280 Ga. App. 486, 489 (2006); King v. Dodge Cnty. Hosp. Auth., 274 Ga. App. 44, 45 (2005). However, there are a handful of cases where the "duty" imposed by the statute is the basis for a negligence claim, which is how Plaintiffs here present it. See, e.g., Bradley Ctr., Inc. v. Wessner, 250 Ga. 199 (1982); (Doc. 1 at ¶¶ 127-30).

Section 51-16-2 is not a cause of action but rather provides immunity in actions involving a COVID-19 liability claim. Specifically, "[n]o healthcare facility, healthcare provider, entity, or

individual shall be held liable for damages in an action involving a COVID-19 liability claim against such [entity]." O.C.G.A. § 51-16-2. However, there is no immunity if Plaintiffs prove that the actions of the entity or individual showed "gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm." See O.C.G.A. § 51-16-2(a).

Plaintiffs allege that Defendants were grossly negligent, apparently violating O.C.G.A. § 51-1-13 without the immunity protections of O.C.G.A. § 51-16-2. CoreCivic, however, is protected from liability under O.C.G.A. § 51-16-2 because it was not grossly negligent, despite Plaintiffs' arguments to the contrary. This statute provides a healthcare facility, healthcare provider, or other entity or individual immunity for COVID-19 liability claims. According to O.C.G.A. § 51-16-1, a "COVID-19 liability claim" means, in relevant part, a cause of action for (A) transmission, infection, exposure, or potential exposure of COVID-19 to a claimant at any healthcare facility or on the premises of any entity, or (B) acts or omissions by a healthcare facility or healthcare provider in arranging for or providing healthcare services or medical care to the claimant resulting in injury or death of the claimant for COVID-19. According to the same statute, an "entity" means, in relevant part, any corporation, company, or limited liability company, including managers, officers, directors, employees, contractors, officials, and agents thereof. Id. Because medical services are provided to inmates at Wheeler, CoreCivic could arguably be a healthcare facility or healthcare provider, but even if it is not, CoreCivic is included in the immunity statute because it extends to "any other organization other than a healthcare facility." Id.

It appears that the Georgia Court of Appeals has addressed this statute only once and it was within the nursing home context. See Arbor Mgmt. Servs., LLC v. Hendrix, 364 Ga. App. 758 (2022). In that case, the plaintiffs alleged that the defendant nursing home failed to enforce restrictions on outside visitation, failed to ensure that staff wore masks or other PPE, failed to

enforce social distancing among residents, and allowed asymptomatic staff who had been exposed to the virus to continue to work. Id. at 759. The plaintiffs alleged that the defendant nursing home was grossly negligent, asserting "a want of even slight care and diligence." Id. at 759-60. The court, in holding that the defendant nursing home was not grossly negligent, looked only to the conduct alleged in the complaint, not the plaintiffs' legal characterization of it as grossly negligent, noting that the court is under no obligation to adopt a party's legal conclusions based on the facts. Id. at 766. The complaint alleged that the defendant nursing home,

> [a]fter restrictions [on outside visitation] were purportedly established, . . . failed to exercise even slight diligence to enforce them as individuals from outside the facility were still permitted to visit individual[s] inside the facility and no commonsense safety precautions were implemented such as limiting visitation to an isolated area in the facility. . . .
>
> Arbor Terrace failed to exercise even slight diligence to prevent the spread of the coronavirus by allowing staff members to work at the facility without wearing masks or other protective equipment . . . as late as March 25, 2020. . . .
>
> Arbor Terrace failed to exercise even slight diligence to prevent the spread of the coronavirus by allowing asymptomatic staff who had been exposed to COVID-19 to continue to work at Arbor Terrace. . . .
>
> Arbor Terrace did not even implement a policy of social distancing among residents and in the common areas until on or after March 17, 2020.
>
> On or about March 17, 2020, when any person of common sense would have recognized the catastrophic consequences of the spread of COVID-19 within an assisted living community, Arbor Terrace hosted a St. Patrick's Day social among residents in its common areas. . . .
>
> On or about March 17, 2020, when any person of common sense would have recognized the catastrophic consequences of the spread of COVID-19 within an assisted living community, Catherine Hendrix was taken on a scenic ride organized by Arbor Terrace with several other residents of Arbor Terrace, a driver . . . and a [s]taff [p]assenger. . . .

Id. at 766-67.

The court found that these actions did not rise to the level of gross negligence. The court emphasized that these events occurred in the early days of the pandemic where there was great

15

uncertainty and incomplete scientific understanding of the novel virus and its behavior and any mitigation strategies were unsettled and unfamiliar. Id. at 767-78. The court found that the defendant nursing home's response was belated and fell short, but it did respond. Id. at 768. The defendant nursing home had a policy limiting visitation, but it failed to adequately enforce it. Id. Further, the defendant nursing home eventually implemented social distancing and mask wearing policies. Id. The court found that the type of events hosted by the defendant nursing home was not the sort of event that might demonstrate the total absence of even a slight amount of common sense that typifies gross negligence. Id. The court found that the defendant nursing home, at most, demonstrated a belatedness or lack of urgency in its response, but it did not demonstrate a total disregard for the welfare of the residents. Id. The court reasoned that, "put another way, merely acting in a way that no prudent person would is negligence, but absent a greater deviation from ordinary care beyond that 'which even careless' people observe, the conduct does not meet the gross negligence standard." Id. The court noted that the complaint did not allege that the defendant nursing home was oblivious to risk, resistant to action, or undertook activities that *increased* the risk of exposure in a way that was not already part of routine life at the facility. Id. Thus, the court concluded that the facts alleged in the complaint demonstrated an under-response to the pandemic but did not meet the plaintiffs' burden to allege gross negligence and thus did not overcome the immunity provided for in O.C.G.A. § 51-16-2.

For the reasons similar to those described supra in Count Two, Plaintiffs have not sufficiently pleaded a claim for gross negligence against the Corporate Defendants. CoreCivic had a series of policies in place to address COVID-19 and protect the inmates. Plaintiffs allege that these policies were not followed, but that does not mean that CoreCivic as an entity demonstrated an entire want of care or deviated from the standard of care that even a careless person would

16

observe. The Eleventh Circuit recently held that a prison was not deliberately indifferent when it had simply done the best that it could given the circumstances and the nature of the pandemic. Swain, 961 F.3d at 1289. The Court stated that "[w]e simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by doing their best. Because the defendants acted reasonably, they cannot be found liable under the Eighth Amendment." Id. The Eleventh Circuit also noted that failing to do the impossible does not equal indifference. Id. at 1287.

Plaintiffs' decedent died in August 2020, only a few months after the pandemic began. Correctional facilities were faced with the impossible task of balancing the needs of the inmates with the overarching state interests of housing offenders. Plaintiffs allege that understaffing at Wheeler Correctional Facility contributed to CoreCivic's alleged deliberate indifference and gross negligence, but maintaining a fully staffed facility in the early stages of COVID-19 was impossible. Impossibility, as the Eleventh Circuit noted, does not equal indifference, or gross negligence for that matter. Like the defendants in the nursing home case, the events alleged in Plaintiffs' Complaint occurred during a time of uncertainty and incomplete scientific understanding of the novel virus and its behavior, and any mitigation strategies were unsettled and unfamiliar. CoreCivic enacted policies of its own and adopted the policies that were in place at the Georgia Department of Corrections. These policies did not prevent every person from contracting and becoming ill with COVID-19, but such would have been unavoidable. The Corporate Defendants were not grossly negligent and are therefore immune from liability for Plaintiff's COVID-19 liability claim as a covered entity under O.C.G.A. § 51-16-2.

    4.    <u>Plaintiff Billy Kindell's Wrongful Death Claim Is Barred by the Statute of Limitations.</u>

This lawsuit seeks damages for both wrongful death, brought by Billy Kindell as surviving father of Corey Kindell, and estate claims, brought by Neki Peavy as administrator of the estate. Plaintiff Billy Kindell's wrongful death claim is time-barred. In Georgia, the statute of limitations for tort actions is two years and applies to both state law claims and 42 U.S.C. § 1983 deliberate indifference claims. <u>DeYoung v. Owens</u>, 646 F.3d 1319, 1324 (11th Cir. 2011). A cause of action for wrongful death accrues at the time the death occurs. <u>See</u> <u>Williams v. Ga. Dep't of Human Res.</u>, 272 Ga. 624, 626 (2000). Plaintiffs' decedent died on August 21, 2020. This complaint was filed on August 22, 2022, exactly two years and one day after the loss occurred. Thus, the wrongful death claim brought by Plaintiff Billy Kindell must be dismissed, and Plaintiff Neki Peavy may only seek damages on behalf of the estate, precluding any measure of damages assessed as the full value of the life of the decedent. As a result, Plaintiff Billy Kindell should also be dismissed as a Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against Defendants CoreCivic, Inc.; CoreCivic of Tennessee, LLC; Vance Laughlin; Qiana Mobley; Christy Davis; Annie Reese; Vanessa Wise; Shaniqua Wicker; Tashika McKinnon; and Amberlyn Floyd must be dismissed. Because Plaintiffs' claims as plead warrant dismissal, Plaintiffs' claim for attorneys' fees also fails.

Respectfully submitted this 2nd day of December, 2022.

                                                    OLIVER MANER LLP

                                                    /s/ JACOB D. MASSEE
                                                    /s/ AMELIA C. STEVENS

Post Office Box 10186                    JACOB D. MASSEE
Savannah, Georgia 31412               Georgia Bar No. 551890
(912) 236-3311 – Telephone            AMELIA C. STEVENS
(912) 236-8725 – Facsimile             Georgia Bar No. 758771
jmassee@olivermaner.com
astevens@olivermaner.com               ***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF", which was generated as a result of electronic filing, by e-notification and e-service to the following:

Zack Greenamyre
Mitchell & Shapiro LLP
3490 Piedmont Road
Suite 650
Atlanta, Georgia 30305
zack@mitchellshapiro.com

Amith Gupta
American Trial Law Litigators, LLC
925 Peachtree Street NE
Suite 2151
Atlanta, Georgia 30309
amithrgupta@gmail.com

Submitted this 2nd day of December, 2022.

OLIVER MANER LLP

/s/ AMELIA C. STEVENS

| | |
|---|---|
| Post Office Box 10186 | JACOB D. MASSEE |
| Savannah, Georgia 31412 | Georgia Bar No. 551890 |
| (912) 236-3311 – Telephone | AMELIA C. STEVENS |
| (912) 236-8725 – Facsimile | Georgia Bar No. 758771 |
| jmassee@olivermaner.com | |
| astevens@olivermaner.com | *Attorneys for Defendants* |