IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

NEKI PEAVY, as administrator of    *
the Estate of Corey Kindell,       *
and BILLY EUGENE KINDELL, as       *
surviving father of Corey          *
Kindell,                           *
                                   *
        Plaintiffs,                *
                                   *
        v.                         *        CV  322-095
                                   *
CORECIVIC, INC.; CORECIVIC OF      *
TENNESSEE, LLC; VANCE LAUGHLIN;    *
QIANA MOBLEY; CHRISTY DAVIS;       *
ANNIE REESE, VANESSA WISE;         *
SHANIQUA WICKER, TASHIKA           *
MCKINNON; and AMBERLYN FLOYD,      *
                                   *
        Defendants.                *

O R D E R

Presently before the Court is a motion to dismiss the amended complaint in the captioned matter filed by Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively referred to as ("CoreCivic") and nine individually named employees of Wheeler Correctional Facility.[1]  CoreCivic operates the facility.

---

[1] Plaintiffs filed the amended complaint in response to Defendants' first motion to dismiss.  This first motion to dismiss (doc. no. 10) is **DENIED AS MOOT**.

The motion has been fully briefed. The Court has reviewed the amended complaint, the relevant law, and the parties' briefs. The motion to dismiss is denied in part and granted in part as more fully explained below.

## I.  FACTUAL BACKGROUND

This lawsuit arises out of death of a state prisoner, Corey Kindell, at the Wheeler Correctional Facility on August 21, 2020. According to the amended complaint, the decedent was gravely ill with the COVID-19 virus and was exhibiting obvious signs of his illness for two weeks prior to his death. (Doc. No. 12.) His symptoms included not being able to get out of bed for head count or to get food; fever; struggling to breathe; wheezing and coughing; and shortness of breath. (Id. ¶¶ 4-5, 70-75.) Plaintiffs further allege that the decedent was particularly vulnerable to the COVID-19 virus because he was "significant[ly] obese" and had hypertension. (Id. ¶ 45.) Plaintiffs complain that each individual Defendant was assigned to the decedent's dormitory on several different occasions during the two-week period before his death and therefore readily observed his COVID-19 symptoms, witnessed other inmates carrying the decedent outdoors, excused him from standing for headcount, and knew that the decedent had stopped eating. (Id. ¶¶ 82-86, 89.) Plaintiffs

further allege that the decedent and other inmates told each Defendant that he needed emergency medical attention. (Id. ¶ 87.) Yet, each individual Defendant ignored his deteriorating health and failed to provide treatment (including a failure to test the decedent for the COVID-19 virus).[2]  (Id. ¶¶ 52, 57, 67, 91-92.) The only medical care the decedent received was on the day of his death, when he became unresponsive in the dormitory. (Id. ¶¶ 93-97.)

The allegations against Defendant CoreCivic revolve around the failure to follow the protocols and policies put in place in response to the COVID-19 pandemic.  Plaintiffs allege that CoreCivic demonstrated a "widespread and wholesale departure" from its policies (id. ¶ 116), which caused the decedent to get sick and then did nothing to help him and others stricken with COVID-19 (id. ¶¶ 118-19).

Based on these factual allegations, Plaintiffs assert four claims for relief in the amended complaint.  Count I is a federal claim under 42 U.S.C. § 1983 for deliberate indifference against the individual Defendants, which includes the then-Warden of the facility and eight correctional officers.  Count II is a § 1983 claim against Defendant CoreCivic for its failure to prevent a

---

[2] Plaintiffs also allege that Defendant Qiana Mobley stated that the decedent "was a 'fat ass' and would be able to stand up if he might get a 'twinkie.'"  (Id. ¶ 90.)

3

known risk of harm to the decedent and other inmates and for its failure to adequately treat the decedent, thereby causing his death. Count III is a state law claim of gross negligence against all Defendants under O.C.G.A. §§ 51-1-13 and 51-16-2. Finally, Count IV is a claim for attorney's fees under O.C.G.A. § 13-6-11. Plaintiff Neki Peavy files suit as the administrator of decedent's estate, and Plaintiff Billy Eugene Kindell files suit as the decedent's father and next of kin. Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has provided additional guidance to the Rule 8(a) analysis in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Pursuant to the Twombly/Iqbal paradigm, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In ruling on a motion to dismiss, the Court

4

must accept the factual allegations of the complaint as true.  Id. This same tenet is not applicable to legal conclusions however. Id. at 678, 680.

For a claim for relief to be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct."  Id. at 679.  That is, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  Finally, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III.  LEGAL ANALYSIS

Section 1983 provides a cause of action for citizens to seek redress for violations of federal law committed by state officials. To state a cause of action under § 1983, a plaintiff must allege that the conduct complained of was committed by a person acting under state law; and the conduct violated a right, privilege, or immunity secured by the United States Constitution or laws of the United States.  Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992).  In this case, Defendants do not challenge that every Defendant was acting under color of state law in dealing with the decedent.  Accordingly, the Court need determine whether Plaintiff has sufficiently pled that Defendants violated federal law.

### A.  Plaintiffs' § 1983 Claim Against the Individual Defendants (Count One)

In the amended complaint, Plaintiffs refer to the Eighth and Fourteenth Amendments.  Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).  The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Farmer v. Brennan, 511 U.S. 825, 833 (1994).  Reasonableness is based upon two factors.  First, to satisfy the objective factor, "the inmate must show that he is incarcerated under conditions posing a substantial risk of harm."  Id. at 834.  Here, Defendants

6

concede that the COVID-19 virus constitutes a substantial risk of harm to inmates. Second, the subjective factor requires a plaintiff to show that the prison officials demonstrated a "deliberate indifference" to the inmate's safety. Id.

Under the subjective factor, an inmate must show that prison officials knew of and disregarded an excessive risk. An inmate must allege facts that show an individual defendant had subjective knowledge of a risk of serious harm and disregarded that risk by more than mere negligence. Lane v. Philbin, 835 F.3d 1302, 1308 (11th Cir. 2016). Stated another way, an inmate must show subjective recklessness. Farmer, 511 U.S. at 839-40. Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Against this backdrop, Plaintiffs allege in Count One that the individual Defendants did not properly treat the inmates, particularly the decedent, in light of the serious risk of harm attendant to the COVID-19 virus. Defendants move to dismiss, complaining that Plaintiffs did not state a claim as against *each* Defendant; rather the amended complaint refers to them as a group, i.e. "the defendants." While the amended complaint refers to the individual Defendants as a group, the factual allegations against

them are common to *each* Defendant, except for Defendant Vance Laughlin, the Warden.[3]

The common allegations are as follows.  The eight individual prison officials (Officers Mobley, Davis, Reese, Wise, Wicker, McKinnon and Floyd) were each assigned to the decedent's dormitory several times in the two weeks prior to his death.  Because of their job responsibilities, such as head count, supervision, and control, they had ample opportunity to witness the decedent's deteriorating health.  For instance, Defendant Wise was assigned to the decedent's dormitory for eight days in the two weeks leading up to his death; Defendants Mobley, Davis, Reese and McKinnon were assigned for seven days, and so on.  (Am. Comp. ¶¶ 78-81.) Plaintiffs further allege that "*each* Defendant personally witnessed" the decedent's obvious symptoms of COVID and his inability to stand for head count.  (Id. ¶¶ 82-85 (emphasis added).)  Plaintiffs allege that "each Defendant" observed other inmates carrying the decedent and that the decedent and other inmates reported to "*each* Defendant who was assigned to the dorm" that the decedent needed emergent medical care.  (Id. ¶¶ 86-87 (emphasis added).)  Finally, "each Defendant" was aware that the

---

[3] As Plaintiffs state in brief:  "That many of these actions involved the same (mis)conduct is not surprising: each of the Individual Defendants had the same relationship to Mr. Corey Kindell, but on different days."  (Pls.' Resp. to Mot. to Dismiss, Doc. No. 20, at 2.)

8

decedent had stopped eating at some point.  (Id. ¶ 89.)  The amended complaint explains that months prior to his death, CoreCivic had implemented policies mandating its staff to identify and isolate COVID positive inmates and regularly test for the virus.  (Am. Compl. ¶ 34.)  The policies also stated that anyone experiencing COVID symptoms would receive the highest priority medical treatment.  (Id. ¶ 48.)  In sum, the amended complaint alleges that the staff assigned to decedent's dormitory in the two weeks prior to his death had subjective knowledge of the serious risk of COVID and recklessly disregarded that risk.  These officials, based upon the allegations in the amended complaint, did not respond reasonably to the risk of harm to the decedent. They did not respond at all.  They violated CoreCivic's policies to isolate and provide the highest priority medical attention. This utter failure to treat the decedent in contravention of clear policy creates a reasonable inference that the prison officials assigned to the dormitory acted with reckless indifference to the decedent's health and safety.  Accordingly, the amended complaint states a plausible claim of deliberate indifference against Defendants Mobley, Davis, Reese, Wise, Wicker, McKinnon and Floyd.[4]

---

[4] To be clear, the surviving claim is a claim of deliberate indifference to *the decedent's* serious medical needs.  The claim does not involve allegations of a *system-wide* failure to adequately respond to the COVID-19 pandemic.  Thus, how other inmates were

Turning back to Warden Laughlin, there is no plausible claim that he acted with deliberate indifference to the decedent's health and safety. There is no allegation that the Warden was personally involved with the decedent. The Warden was not a prison guard and was not "assigned" to observe, count or care for inmates. The Warden's only involvement in the case is a visit to the decedent's dormitory, at which time he told the inmates he knew they were suffering and that they could ask for over-the-counter pain medicine. (Am. Compl. ¶ 50.) This factual allegation is not sufficient to show that he was in the position to know about the decedent's particular health condition or witness any deterioration. His singular visit to the dormitory does not show a subjective intent to do harm, regardless of whether his remark about over-the-counter pain medication was flippant or inadequate to the occasion. Thus, Plaintiffs have failed to state a claim of deliberate indifference against Warden Laughlin.

**B. Plaintiffs' § 1983 Claim Against Defendant CoreCivic (Count Two)**

Plaintiffs also state a deliberate indifference claim against the operator of the prison, CoreCivic. The claim begins with the statement that "CoreCivic knew that COVID-19 represented a serious risk of harm and potential death to the incarcerated men and women

---

treated is more than likely irrelevant, especially given the Court's dismissal of Count Two, *infra*.

in custody." (Am. Compl. ¶ 114.) It then asserts that CoreCivic "demonstrated widespread and wholesale departure" from the policies implemented to combat the effects of COVID-19. (Id. ¶ 116.) As it relates to the decedent, the amended complaint states that CoreCivic "did nothing whatsoever to help Mr. Kindell and men like him." (Id. ¶ 118.)

Liability will be imposed under § 1983 only if the state actor had personal involvement in the alleged misconduct. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). A government entity cannot be held liable under § 1983 on a *respondeat superior* or vicarious liability basis. Harvey, 949 F.2d at 1130 (stating that an entity cannot be faulted for the conduct of its employees under § 1983); see also Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018) ("[S]upervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly."). Rather, in order to maintain a § 1983 claim against CoreCivic, Plaintiffs must show that an official policy or custom was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978), quoted in City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). The critical question here is whether Plaintiffs sufficiently allege that a policy or

custom of CoreCivic caused the decedent to suffer a constitutional deprivation.

Rather than allege that a CoreCivic policy or custom that was the moving force behind the decedent's COVID death, Plaintiffs assert that CoreCivic *implemented* policies responsive to the COVID-19 pandemic. Yet, there are no allegations that these policies were insufficient. Plaintiffs claim that CoreCivic knew that its policies were being ignored on a systemic basis at the Wheeler Correctional Facility, but they state no facts to support this conclusory claim. Moreover, a single violation does not suffice to demonstrate a custom or policy. See Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019) ("A plaintiff can only allege the existence of a policy or custom by 'point[ing] to multiple incidents or multiple reports of prior misconduct . . . .'" (quoted source omitted)).

In short, because the conduct of the individual Defendants in this case cannot be imputed to CoreCivic, Plaintiffs must allege sufficient facts to plausibly demonstrate that its custom or policy was the moving force behind the decedent's constitutional deprivation. Plaintiffs have failed to do so. The generalized allegations that inmates were improperly exposed to the COVID-19 virus or did not receive adequate medical care are too conclusory

to state a plausible claim of deliberate indifference against
CoreCivic.

## C. Plaintiffs' State Law Claim (Count Three)

In Count Three, Plaintiffs assert a state tort action against
all Defendants for physical injury to a person.   (Am. Compl. ¶¶
127-32 (citing O.C.G.A. § 51-1-13).)   Plaintiffs also recognize,
however, that Georgia has limited COVID tort liability in O.C.G.A.
§ 51-16-2, which provides:

> No healthcare facility, healthcare provider,
> entity, or individual shall be held liable for damages
> in an action involving a COVID-19 liability claim
> against such healthcare facility, healthcare provider,
> entity, or individual, unless the claimant proves that
> the actions of the healthcare facility, healthcare
> provider, entity, or individual showed gross negligence,
> willful and wanton misconduct, reckless infliction of
> harm, or intentional infliction of harm.

Thus, Plaintiffs generally allege that Defendants' failure to
protect the decedent from foreseeable harm amounted to gross
negligence, willful and wanton misconduct, and reckless and
intentional infliction of harm.[5]   (Am. Compl. ¶¶ 127-28.)

Defendants move to dismiss this count on the same basis as
the § 1983 claims; dismissal of this claim will therefore follow
the federal claims.   Accordingly, because Plaintiffs have
plausibly alleged that the individual prison guards acted

---

[5] The parties do not dispute the applicability of the COVID-19
Pandemic Business Safety Act.

recklessly, the state tort claim against them stands.   However, Defendants Laughlin and CoreCivic are dismissed because there are no factual allegations to support a plausible claim of anything more than negligent conduct, and thus, they are protected by the COVID-19 Pandemic Business Safety Act.

### D. Plaintiffs' Claim for Attorney's Fees

Because an award of attorney's fees is derivative of a plaintiff's substantive claims, the Court will dismiss this claim as against  Defendants Laughlin and CoreCivic.

### E. Statute of Limitations

In their motion to dismiss, Defendants assert that Plaintiff Billy Eugene Kindell's wrongful death claims are barred by the applicable statute of limitations.   In Georgia, wrongful death claims accrue at the time the death occurs, e.g., Miles v. Ashland Chem. Co., 410 S.E.2d 290, 291 (Ga. 1991), and the applicable statute of limitations for injuries to a person is two years.  See O.C.G.A. § 9-3-33 (providing two-year limitations period for injuries to the person); DeYoung v. Owens, 646 F.3d 1319, 1324-25 (11th Cir. 2011) (explaining that Georgia's statute of limitations governing personal injury actions applies to § 1983 claims).

In this case, the decedent died on August 21, 2020; the complaint was filed on August 22, 2022.   Defendants contend this

is one day too late.  In response, Plaintiffs point out that August 21, 2022 fell on a Sunday.

Federal Rule of Civil Procedure 6(a)(1)(C) provides that if the last day of the tolling period ends on a weekend or holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Georgia law has a similar provision.  See Gullatt v. Omega PSI PHI Fraternity, Inc., 546 S.E.2d 927, 928-29 (Ga. Ct. App. 2001) (explaining that O.C.G.A. § 1-3-1(d)(3) saved an otherwise untimely personal injury action because the last day of the two-year limitations period fell on a Sunday); Infinite Energy, Inc. v. Pardue, 713 S.E.2d 456, 464 (Ga. Ct. App. 2011) ("We have long held that O.C.G.A. § 1-3-1(d)(3) . . . applies to personal injury actions governed by the two-year statute of limitations in O.C.G.A. § 9-3-33 . . . ."). Thus, the fact that the end of the limitations period in this case fell on a Sunday saves Plaintiffs' wrongful death claims.

Defendants did not move to dismiss any estate claims brought by Plaintiff Neki Peavy, as administrator of the decedent's estate. Accordingly, any estate claims stand.


## IV.  CONCLUSION

Upon the foregoing, Defendants' motion to dismiss Plaintiffs' amended complaint (doc. no. 16) is **GRANTED IN PART** and **DENIED IN**

**PART**.  More specifically, Defendants CoreCivic, Inc., Corecivic of Tennessee, LLC, and Defendant Vance Laughlin are hereby **DISMISSED**. The case will proceed against Defendants Mobley, Davis, Reese, Wise, Wicker, McKinnon, and Floyd.

      **ORDER ENTERED** at Augusta, Georgia, this 27th day of April, 2023.

UNITED STATES DISTRICT JUDGE

16